Dairyman's State Bank of Marengo, Appellant, v. Nellie S. Dunham, Appellee.

Gen. No. 8,637.

Opinion filed May 25, 1933. Rehearing denied July 6, 1933.

ALLEN B. WOODARD, for appellant.

WILLIAM L. PIERCE, for appellee.

MR. PRESIDING JUSTICE WOLFE delivered the opinion of the court.

The appellant filed its declaration of one count in assumpsit against the appellee on her promissory note dated June 1, 1929, for the principal sum of $1,500. An affidavit of claim was filed with the declaration. The appellee first filed the plea of non-assumpsit and a plea verified by her attorney denying the delivery of the note. The latter plea, on motion of the appellant, was stricken from the files. Thereupon the appellee again filed the plea of non-assumpsit, an unverified plea denying the delivery of the note and an affidavit of merits. The appellant filed a replication to the plea. Regarding the affidavit of merits, there

is no controversy that its allegations were not sufficient to allow the introduction of appellee's evidence hereinafter mentioned. By stipulation of the parties a jury trial was waived and the cause was submitted to the judge for a finding and judgment.

The appellant introduced the note in evidence and rested its case. The appellee introduced evidence tending to show that there was no consideration for the giving of the note and also that it was conditionally delivered. The court found the issues for the appellee and rendered a judgment against the appellant for costs.

Two assignments of error made by the appellant will now be considered. It is first urged by the appellant that since there was no verified plea of the appellee denying the execution of the note as provided by the Practice Act, evidence was not admissible to prove that the note was conditionally delivered. In support of his position the appellant cites cases holding that delivery of a note is an essential part of its execution, and that evidence under an unverified plea showing that the note was never delivered is not admissible. (*Bailey v. Valley Nat. Bank,* 127 Ill. 332.) It is next contended by the appellant that the evidence tending to show that there was no consideration for the giving of the note was not admissible because there was no special plea filed by the appellee denying consideration for the note (see *Keith v. Mafit,* 38 Ill. 303, and *Wilson v. King,* 83 Ill. 232, 238). To dispose of these two assigned errors, a reference to the bill of exceptions is necessary.

The testimony of the appellee was the only evidence introduced contesting the appellant's prima facie case, made by introducing the note in evidence. She testified, in effect, that before signing the note the cashier of the appellant bank told her that she would not have to pay the note; that she was taking no chances as she

was only loaning her name to the bank; that before she signed the note the cashier promised to give her a receipt or statement showing that she was the owner of a one-seventh interest in a Dakota farm owned by the appellant. The introduction of this evidence was objected to by the appellant on the ground, among others, that the proffered testimony did not concern the delivery of the note but its payment. The court overruled the objections stating, "The court is only admitting this evidence for whatever bearing it may have on the question of delivery." When the appellee testified that she did not receive from the appellant any money or anything from the bank for signing the note, the appellant made a motion that the testimony be stricken on the ground that it was a conclusion of the witness. Appellant introduced evidence tending to contradict all of this testimony of the appellee.

Nowhere does it appear in the bill of exceptions, or the record proper, that the appellant objected, or took exception, on the specific ground that such evidence of the appellee was inadmissible because the plea denying the execution of the note was not verified or that there was no special plea denying consideration for the note. This should have been done to obtain a ruling from the trial judge, and to allow the appellee an opportunity to amend the pleadings if she desired. Otherwise the assigned error cannot be considered in this court. *Wilson v. King,* 83 Ill. 232; *Logan v. Mutual Life Ins. Co.,* 293 Ill. 510.

The appellant also assigns as error that the finding of the trial judge is contrary to the manifest weight of the evidence. Underlying this contention there are two propositions insisted on by the appellant. It is urged that the evidence of the appellee varies the terms of the note and it was therefore inadmissible; that that part of appellee's testimony which the appellee insists shows that there was a conditional de-

livery of the note, in fact shows the manner of the payment of the note.

The appellee is the daughter of Chauncey A. Dunham who died testate on December 30, 1926, leaving him surviving as his heirs, Ella C. Dunham, his widow, the appellee and a grandson. The will of Chauncey A. Dunham, after making several bequests, devises all the remainder of his real and personal property to the widow and the appellee. The appellee and Ella C. Dunham were appointed executrices of the will by the county court of McHenry county. The inventory filed in the estate was introduced in evidence and shows that Mr. Dunham died seized in fee of six parcels of real estate situated in Illinois and upon which there was placed an aggregate value in the inventory by the executrices of $22,150. He did not leave a great amount of personal property and there is nothing in the record to show its market value. It was not proved nor is it contended by appellee that the Dunham estate was insolvent.

Mr. Dunham during his lifetime executed his note for $1,500 payable to the appellant bank one year after its date. He never paid any interest on this note, although it called for the payment thereof. This note was renewed by Mr. Dunham giving new notes on the first day of June of each year, which was the due date of the original note. The last of such renewal notes was due on June 1, 1927, which was about five months after the death of Mr. Dunham. The reason for the giving of the first note of Mr. Dunham to the appellant bank is apparently understood by the parties to this appeal, but this court is not apprised by the evidence, or admission of the parties, of the circumstances connected with the execution of this note. Nor does it appear whether the note was included among the assets of the bank. (*McComb v. Jacobs,* 256 Ill. App. 141.) Nor does it appear from the evidence for what purpose

the note was given. (*State Bank of West Pullman v. Hovnanian*, 250 Ill. App. 144.) No claim was filed against the Dunham estate based on the note.

The testimony of the appellee is substantially as follows: That her father since the year 1918, to the time of his death was a stockholder and a director of the appellant bank; a few days before June 1, 1927, she and her mother were in the appellant bank and that Clarence Coarson, the cashier of the bank, called their attention to the Dunham note and told them that the note was due and he wanted them to sign it; that appellee and her mother knew the note was in the bank since the time Mr. Dunham executed the first note for $1,500. Coarson told them that if they did not sign the note, the bank would file a claim against the estate of Chauncey A. Dunham. The appellee and her mother told Coarson they did not have the money to pay the note and that the bank should file the note as a claim against the Dunham estate. Coarson told them that the only thing for them to do was to renew the note themselves. They told Coarson that they did not want to do so as their attorney had advised them not to sign a note to take the place of the Dunham note. Coarson informed them that they were not taking any chances by signing a new note as they were only loaning their name to the bank until a Dakota farm owned by the bank could be sold and the note would then be canceled; that Coarson said that the farm was in good condition and he thought it would sell and the note would be canceled; that they would never have to pay the note. When the appellee and her mother asked Coarson for a receipt or statement showing that they had a one-seventh interest in the farm, he promised to give them one, but he never did. After they signed the note, they again asked Coarson for the receipt. Coarson said he had not got around to make it out. They were also told by Coarson that they would not have to pay interest on their note.

On October 28, 1927, the appellee and her mother had another conversation with Coarson and which was of similar import, the appellee testified, to the conversation held in June. It was on October 28, 1927, that the appellee and her mother signed a note for $1,500, dated June 1, 1929, payable one year after its date with interest at seven per cent after its date until paid. This note and a like note dated June 1, 1928, were renewed by the appellee and her mother by the execution of new notes, each for $1,500 with similar terms as the first note. The note introduced in evidence was the last renewal of the original note dated June 1, 1927. It appears in evidence that the note of Mr. Dunham was canceled by the bank and given to the appellee and her mother when their first note was signed. The widow of Chauncey A. Dunham died before suit was brought on the note now in question.

The appellant introduced the evidence of Coarson and George Redpath, who were respectively the cashier and president of the appellant bank during all the time in question. The appellant bank is in the process of liquidation by its present officers and neither Coarson nor Redpath had any connection with the bank as officers when they testified.

Mr. Coarson testified that when the Dunham note became due on June 1, 1927, he asked the appellee and her mother to sign a new note as he knew that they were the only heirs of Chauncey A. Dunham; that he also told them that the Dunham note was good and there would be no chances of any more loss by signing a new note than leaving the old note stand; that the appellee and her mother informed him that they were advised not to sign any note; that he told them that they would either have to renew the note or a claim would be filed against the Dunham estate; that they were taking no chances by signing a new note; that he explained to them that there was a $11,000 mortgage on the Dakota farm and this was considered

a liability instead of an asset; that an offer might be worked out, with the approval of the directors of the bank; that if the appellee and her mother would assume one-seventh of the liability, pay one-seventh of the expenses, take one-seventh of the income and pay in $1,500, the bank would give them a one-seventh interest in the farm. This proposition was never accepted by the appellee or her mother, and the matter was dropped so far as he was concerned. Coarson denied that he told the appellee and her mother that they would never have to pay the note. On cross-examination he testified that he told appellee and her mother that if the Dakota farm sold for enough and above the mortgage, they would probably not have to pay their note; that there was some talk of a receipt showing that arrangement; that he did not think that he told them he would give them a receipt; there was no promise held out to them to sign the note.

Mr. Redpath testified that he told the appellee and her mother on October 28, 1927, that they would have to sign a new note or a claim would be filed against the Chauncey A. Dunham estate. The appellee and her mother asked for a one-seventh interest in the Dakota farm and witness told them that the bank would not give them such an interest unless they would assume one-seventh of the $11,000 mortgage on the farm; that he did not tell them that if the farm sold for more than the mortgage, the appellee would be reimbursed on their note to the amount of one-seventh above the mortgage debt, whether the note was paid or not. He did not tell the appellee and her mother that they would not have to pay their note. He also told them that the farm was not paying. On cross-examination Mr. Redpath denied that the appellee and her mother asked for a receipt for a one-seventh interest in the Dakota farm. He also testified that the appellee and her mother did not talk about taking a one-seventh

interest in the Dakota farm and assuming one-seventh of the $11,000 mortgage.

In rebuttal the appellee testified that the only conversation by her or her mother about the new note was had with Coarson and they never talked to Redpath about the new note.

The testimony of all of the witnesses is to the effect that unless the appellee and her mother executed a note in exchange for the Chauncey A. Dunham note a claim would be filed against his estate. It was proved that the Dunham note was canceled and surrendered to the appellee. Under the facts in evidence coupled with the surrender and cancellation of the Dunham note the appellant gave up its right to file a claim against the estate of Mr. Dunham for the amount of the note. While the conclusion may not be drawn from the evidence that there was an express promise on the part of the bank to forebear filing the note against the Dunham estate, there was an implied promise, under the facts, on the part of the bank not to do so. If there was a deficiency of the personal assets of the Dunham estate to pay the debts of the estate, the appellant, not having surrendered the Dunham note, could have proceeded against the appellee and her mother to recover the amount of the note to the extent of the real estate devised to them by Mr. Dunham's will, although the appellant had not filed a claim against his estate within the time required by the Administration Act. Cahill's St. ch. 3, ¶ 61 *et seq. Durflinger v. Arnold,* 329 Ill. 93, 98. The evidence shows that there was a good and valuable consideration for the note executed by the appellee and her mother. *Whelan v. Swain,* 132 Cal. 389, 64 Pac. 560; *Whitney v. Clary,* 145 Mass. 156, 13 N. E. 393; *Nye v. Chace,* 139 Mass. 379, 31 N. E. 736; *Vaughn v. Bass,* 10 Ala. App. 388, 64 So. 543; *Reuter v. Sullivan* (Tex. Civ. App.), 47 S. W. 683; *Mohn v. Mohn,*

181 Iowa 119, 164 N. W. 341; *Kayser v. Hodopp,* 116 Ind. 428, 19 N. E. 297; *Broom & Co. v. Harrah,* 143 Ill. App. 476; *Farmers State Bank & Trust Co. v. Parr,* 234 Ill. App. 78; *Union and Planters' Bank of Memphis v. Jefferson,* 101 Wis. 452, 77 N. W. 889. See also *Wicks v. Metcalf,* 83 Ore. 687, 163 Pac. 434, 988. The note being given for a valuable consideration, evidence that it was not to be paid was inadmissible. *Moore v. Prussing,* 165 Ill. 319; *Farmers State Bank & Trust Co. v. Parr, supra.* The burden was on the appellee to prove a conditional delivery of her note. This evidence should be clear, convincing and specific.

The appellee in her argument insists that this court should accept her sworn statement in her affidavit of merits that the Dunham note was conditionally delivered to the bank as one of seven notes of like amount and character given by the directors of the bank to make up a shortage in the bank and that this note was not to be paid unless creditor suffered a loss by reason thereof. We are not informed if the other six directors of the bank have paid their notes or are being held liable thereon. On the other hand the appellee also insists that the promise of the bank to give her a receipt or statement of a one-seventh interest in the farm was independent of the Dunham note. However, a reference to her affidavit of merits shows that Mr. Dunham was to receive from the proceeds of the Dakota farm such an amount as would reimburse him in case he was called upon to pay his note of $1,500; that the Dunham note became a part of the assets of the bank to satisfy the demands of the State bank examiner.

Under the circumstances it is clear to this court that the testimony in the case (of the appellee) bearing on the question of the conditional delivery of appellee's note is vague and uncertain and not of such character as to convince the court that the note was not to take

effect because there was not a present and effective delivery thereof.

Aside from the affidavit of merits it appears that the evidence relative to the appellee receiving a one-seventh interest in the farm, was to provide for the payment of the note and not a condition precedent to its delivery. *Handley v. Drum*, 237 Ill. App. 587. The appellee testified that she knew about the Dunham note from the time her father signed it; that the appellant knew the circumstances connected with the execution of the Dunham note, of course, is beyond dispute. That much more was said about the Dunham note and the Dakota farm than appears in evidence, when the appellee signed her note, is clear to this court. It was a matter none of the witnesses was anxious to testify about. We are convinced that it was the intention of the parties that the appellee's note was to take the place of the Dunham note and that there was an effective delivery thereof, and that there might be some reimbursement to the appellee out of the Dakota farm if she was called upon to pay the note. The judgment is therefore reversed and the case remanded to the trial court.

*Reversed and remanded.*